**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE PULIDO, | No.  1:14-cv-01174-DAD-EPG |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT BE DENIED IN THEIR ENTIRETY** |
| M. LUNES, et al., | |
| Defendants. | (ECF Nos. 16 and 19.) |
| | **OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS** |

Jose Pulido ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in a civil rights action pursuant to 42 U.S.C. § 1983.  Correctional officer Defendants have moved to dismiss Plaintiff's Complaint alleging a failure to protect on the ground that Plaintiff's resulting suicide attempt is not actionable.  They also contend Plaintiff's fear was speculative.  The Court disagrees because Plaintiff has alleged sufficient facts that Defendants acted with deliberate indifference to Plaintiff's safety by trying to use Plaintiff's fear of attack to extort information from him, and Plaintiff's suicide attempt was a proximate cause of Defendants' failure to protect him.  Plaintiff has also alleged sufficient facts at the pleading stage to show that his fear was not merely speculative.

1

1    **I.       BACKGROUND**

2           This action now proceeds on Plaintiff's original Complaint, filed on July 28, 2014, against

3    defendants Sergeant ("Sgt") M. Lunes; Correctional Officer ("C/O") Cruz; and C/O Shaw (jointly

4    referred to as "Defendants"), for failure to protect and for deliberate indifference to a serious risk

5    to Plaintiff's health and safety in violation of the Eighth Amendment.  (ECF Doc. No. 1 ("ECF

6    1")).

7           On July 08, 2015, Defendants C/O Cruz and C/O Shaw filed a Rule 12(b)(6) motion to

8    dismiss for failure to state a claim. (ECF 16).   Plaintiff filed his opposition to Defendants' C/O

9    Cruz and C/O Shaw's motion on July 27, 2015, (ECF 18).  Defendant Sgt. Lunes followed with

10   his own Rule 12(b)(6) motion to dismiss for failure to state a claim on July 30, 2015, (ECF 19)

11   and also filed a notice of joinder, joining in all papers filed by Defendants Cruz and Shaw in

12   support of their motion to dismiss. (ECF 20).  Defendants Cruz and Shaw thereafter filed a reply

13   to Plaintiff's opposition. (ECF. 21).  Plaintiff filed his opposition to Defendant Sgt. Lunes'

14   motion to dismiss on August 24, 2015. (ECF 23).  Defendant Lunes filed his own reply in support

15   of the motions to dismiss before the Court on August 31, 2015. (ECF 24).  Defendants' motions

16   to dismiss are now fully briefed and before the Court.

17   **II.      PLAINTIFF'S COMPLAINT**

18          **A.       Allegations**

19          Plaintiff is a state prisoner in the custody of CDCR, presently incarcerated at Corcoran

20   State Prison ("CSP"), in Corcoran, California. (ECF 1 at 5.)  The events at issue allegedly

21   occurred at CSP.  (Id.)  Plaintiff names as defendants Sgt. Lunez, C/O Cruz, and C/O Shaw. (Id.)

22   Defendants are all correctional officials employed by the CDCR at CSP. (Id.)

23          The events giving rise to this lawsuit occurred on July 28, 2010, when Plaintiff made

24   prison officials aware that his life was in danger due to gang disassociation. (Id. at 6.)  A few days

25   prior, Plaintiff overheard that a member of the gang he had disassociated from was to be housed

26   in the same building as Plaintiff. (Id.)  The inmate, known as Camba or Cubby ("Camba"),

27   belonged to the Compton Varrio Segundo street gang, and had a brother who had "jumped" (beat-

28   up) Plaintiff as part of the disassociation process. (Id. at 6-7.)   Plaintiff's fear arose from the fact

2

that he was now a member of a different gang - - the Paisas/Border Brothers/Mexican Nationals ("the Paisas") - - and rules among general population C-Facility inmates "do not permit drop out gang members and/or group betrayers." (Id. at 9.)

On the day that Plaintiff learned that first inmate Camba had arrived at the facility, Plaintiff had a cellmate and could not communicate his concerns directly to prison staff. (Id. at 7.) Therefore, Plaintiff wrote a note addressed to the Correctional Officers, Sergeant and Lieutenant, stating "Attention Co's, Sgt, Lt, my safety is under immediate threat, I need protection," and placed it inside an envelope addressed to his son's mother. (Id.) Plaintiff expected that that note would be intercepted by staff who read all outgoing mail; however, there was no indication that the note was read. (Id.)

In the early morning hours of July 28, 2010, Plaintiff no longer had a cellmate and was able to directly inform staff of his safety concerns. (Id. at 7.) At about "2 or 4 a.m.," Plaintiff handed a written note to the first watch through his cell door when the officer was making his safety rounds and conducting count. (Id.) The note stated "MY LIFE IS IN IMMEDIATE DANGER AND I NEED PROTECTION." (Id.) The Officer took the note and returned to Plaintiff's cell approximately 30 minutes later and returned the note to Plaintiff. (Id.) Staff had written on the note, asking Plaintiff if he could wait for second watch. (Id.) Plaintiff wrote on the note that he could not wait and returned the note to the officer. (Id.)

Later that morning, after breakfast was delivered to the cells, the tower officer opened Plaintiff's cell door and announced for Plaintiff to get ready to go to the Correctional Treatment Center. (Id. at 8.) The announcement was a diversion so that other inmates would not be aware that Plaintiff was going to talk to staff. (Id.) Plaintiff was thereafter escorted to the program office, into the education section, where he was subsequently interviewed by C/O Shaw and C/O Cruz, at Sgt. Lunes request. (Id.)

Plaintiff communicated his safety concerns to C/Os Shaw and Cruz, explaining that he used to belong to the Compton Varrio Segundo gang when he was younger, but that he belonged to the Paisas now that he was in prison, and he was aware that a member of the Compton Varrio Segundo gang had recently arrived to the building, which meant that his life would be in danger if

1   information of his previous gang affiliations got out.  (<u>Id</u>. at 8-9.)

2          When Sgt. Lunes returned to the room, Plaintiff reiterated his concerns, but was told by

3   Lunes, Cruz, and Shaw that the only way Plaintiff could receive protection was if he provided

4   information about illegal activity in the facility. (<u>Id</u>. at 9.)  Plaintiff allegedly informed the

5   officers that he did not have any information about any illegal activity, to which the officers

6   responded that if he could not help the officers, they could not help him. (<u>Id</u>. at 9 and 18.)

7   Plaintiff was also allegedly told by Sgt. Lunes that he had "choosed [sic] the wrong day." (<u>Id</u>. at

8   9.)  Plaintiff was then escorted back to his cell by C/Os Cruz and Shaw. (<u>Id</u>.)

9          After Plaintiff returned to his cell, Sgt. Lunes approached the cell and stated loudly "that if

10  Plaintiff changed his mind and wanted to give that information, to just let the Sergeant know."

11  (<u>Id</u>. at 10 and 18.)

12         Later that afternoon, Plaintiff - - "desperate," "overwhelmed with fear," and knowing that

13  "no Correctional staff was going to help [him]" - - attempted suicide by cutting himself (<u>Id</u>. at 10

14  and 19.)  Plaintiff required surgery and fifty stitches. (<u>Id</u> at 10.)  When interviewed by the

15  prison's Investigative Services Unit ("ISU") and the Institutional Gang Investigation ("IGI"),

16  Plaintiff explained that he wanted to kill himself before other gang members did, because

17  Defendants refused to provide him protection. (<u>Id</u>.)  Plaintiff is disabled and uses a wheelchair,

18  and would have been an easy victim of an attack. (<u>Id</u>. at 19.)

19         **B.     <u>Claims</u>**

20         Plaintiff claims that Defendants, and each of them, failed to protect and intentionally

21  violated Plaintiff's Eighth Amendment right against cruel and unusual punishment, by ignoring

22  his safety concerns and failing to follow standard procedure for addressing potential safety

23  threat/concerns, which include "placing that inmate in administrative segregation (AD/SEG) . . .

24  for his own safety and the safety of others." (<u>Id</u>. at 11.)  Plaintiff also asserts that his Eighth

25  Amendment rights were violated when Defendants "failed to protect plaintiff from a specific

26  identified threat to his safety," and conditioned Plaintiff's protection on his ability or willingness

27  to provide information about illegal activity in the prison. (<u>Id</u>. 1 at 10-11.)  Furthermore, Plaintiff

28  claims that Sgt. Lunes placed Plaintiff's life at further risk by loudly reminding him - - so that

1   other inmates could hear - -that if he changed his mind about providing information to let Sgt.

2   Lunes know. (Id. at 11.)

3   **III.     THE COURT'S MAY 16, 2015, SCREENING ORDER**

4        The Prison Litigation Reform Act ("PLRA) provides that the Court has statutory duty to

5   screen complaints in cases such as this and dismiss those complaints that fail to state a claim upon

6   which relief may be granted.  28 U.S.C. §1915(e)(2); 28 U.S.C. § 1915(A). "Dismissal of a

7   complaint for failure to state a claim upon which relief can be granted is provided for by Federal

8   Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915A."

9   Hernandez v. Cox, 989 F. Supp. 2d 1062, 1066 (D. Nev. 2013).

10       On May 16, 2015, this Court issued its Order finding "Plaintiff's allegations that

11  Defendants failed to protect him . . . sufficient to state a claim under the Eighth Amendment."

12  (ECF 12 at 3).  The Order also found service of the Complaint upon Defendants appropriate, and

13  instructed Plaintiff to complete and submit certain enumerated documents for service by a United

14  States Marshall. (Id. at 3-4.)

15       Considering the statutory requirements of the PLRA, and the prior screening order, the

16  Court is disinclined to rule in favor of subsequent motions to dismiss Plaintiff's claims.  Although

17  the Court's May 16, 2015, Order finding Plaintiff's claims cognizable did not include the

18  rationale on which its decision was based, such a fully reasoned analysis is only necessary when it

19  must explain why the complaint does not state at least one claim.  The Court conducted its

20  examination of Plaintiff's Complaint at the screening phase in the same manner it now reviews

21  his Complaint for sufficiency under Rule 12(b)(6).

22  **IV.     DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS FOR FAILURE TO**

23  **          STATE A CLAIM**

24       **A.     Legal Standard**

25       In considering a motion to dismiss under Rule 12(b)(6), a court will presume that all

26  allegations of material fact in the complaint are true. Erikson v. Pardus, 511 U.S. 89, 93-94

27  (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  Additionally, the

28  court must construe the alleged facts in the light most favorable to the Plaintiff.  Scheuer v.

1  Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S.

2  800 (1982).  All ambiguities or doubts are to be construed liberally and in plaintiff's favor.  See,

3  Jenkins v. McKeithen, 395 U.S. 411 (1969).  Thus, a "well-pleaded complaint may proceed even

4  if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is

5  very remote and unlikely.'"  Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 556 (2007).

6  Additionally, pleadings filed by *pro se* litigants - -"however inartfully pleaded" - - are held to a

7  less stringent standard than those drafted by lawyers.  See, Haines v. Kerner, 404 U.S. 519

8  (1972).

9      To survive a motion under Rule 12(b)(6), a complaint whose sufficiency is being tested,

10  must comply not only with the pleading standards set forth in Fed. R. Civ. P. 8(a), which requires

11  only "a short and plain statement" of the claim, but must also satisfy two distinct prongs: (1) it

12  must set forth sufficient factual allegations to support a claim for relief; and (2) it must be

13  plausible on its face. Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 677-678 (2009) (citing Twombly,

14  550 U.S. 544). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

15  *detailed* factual allegations. . . [it] requires more than labels and conclusions." (Emphasis added).

16  Twombly, 550 U.S. at 548.   As to the second prong, a claim is facially plausible when the

17  plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

18  defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662 at 678 (citing Twombly, 550

19  U.S. 556).  The issue, however, "is not whether a plaintiff will ultimately prevail but whether the

20  claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

21      **B.      Defendants' Motions**

22      Defendants argue that Plaintiff fails to state any claims in his Complaint against

23  Defendants, for failure to protect in violation of the Eighth Amendment because they could not

24  have foreseen that Plaintiff would attempt suicide and because his fears of attack from other

25  inmates were speculative.[1]

---

26  [1] As noted above, Defendant Sgt. Lunes has joined (ECF 20) in Defendants Cruz' and Shaw's motion and supporting
papers. (ECF 16.)  Sgt. Lunes also submitted his motion to dismiss and own reply brief. (ECF 19 and 24.)  As a
27  practical matter, Defendant Lunes' motion to dismiss (ECF 19) and reply brief (ECF 24) raise substantially the same
issues and arguments as Defendants Cruz' and Shaw's motion and reply papers and are considered together (ECF 16
28  and 21.)

1    **1.    Failure to Protect—Eighth Amendment Claim**

2         Prison officials have a duty to take reasonable steps to protect inmates from physical

3    abuse. Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682 F. 1237, 1250-51 (9th Cir.

4    1982).  To establish a violation of this duty, the prisoner must establish that prison officials were

5    "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834.

6    Thus, the question under the Eighth Amendment is whether prison officials, acting with deliberate

7    indifference, exposed a prisoner to sufficiently substantial 'risk of serious damage to his future

8    health. . . ." Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  Defendants' failure

9    to act must be a proximate cause of the harm suffered by Plaintiff. Id. at 847.

10        The U.S. Supreme Court has explained that "deliberate indifference entails something

11   more than mere negligence . . .[but] something less than acts or omissions for the very purpose of

12   causing harm or with the knowledge that harm will result." Id. at 835.  The Court defined this

13   "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk

14   of harm of which he is aware." Id. at 836-37.

15        The deliberate indifference standard involves both an objective and a subjective prong. Id.

16   at 846.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at

17   834.  Whether an inmate was exposed to a substantial risk of sufficiently serious harm as a result

18   of the prison official's actions (or inaction) is itself "a question of fact, and as such must be

19   decided by a jury if there is any room for doubt." Lemire v. California Dep't of Corr. & Rehab.,

20   726 F.3d 1062, 1075-76 (9th Cir. 2013) (internal citations omitted).   Nonetheless, to satisfy this

21   objective prong, Plaintiff need only show "that he was exposed to a substantial risk of *some range*

22   *of serious harms*; the harm he actually suffered need not have been the most likely result among

23   this range of outcomes" (emphasis added).  Id. at 1076 (referencing Gibson v. Cnty. of Washoe,

24   Nev., 290 F.3d 1175, 1193 (9th Cir. 2002).)

25        As to the subjective prong of the deliberate indifference standard in these cases, the prison

26   official must "know of and disregard an excessive risk to inmate health or safety. Id. at 837;

27   Anderson v. County of Kern, 45 F. 3d 1310, 1313 (9th Cir. 1995).  To prove knowledge of the

28   risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk

1    may be sufficient to establish knowledge. <u>Farmer,</u> 511 U.S. at 842; <u>Wallis v. Baldwin,</u> 70 F. 3d

2    1074, 1077 (9th Cir. 1995).

3                        **2.      Defendants' Position**

4          Defendants argue that Plaintiff's Complaint fails to state a claim for deliberate

5    indifference in violation of the Eighth Amendment on the basis that (1) "Plaintiff failed to plead

6    that Defendants *knew* Plaintiff was in danger of committing suicide" (ECF 16 at 6); and (2) that

7    "Plaintiff merely speculates that he 'was aware that someone had recently arrived to the building

8    who [was] going to do him harm . . . .'" (<u>Id.</u> at 7.)  Defendants further argue that Plaintiff in fact

9    "admitted that no one had actually threatened him prior to attempting suicide."  (<u>Id.</u> at 7.)

10         In response to Plaintiff's opposition (ECF 23), Defendants argue that "Plaintiff concedes

11   that Defendants did not fail to protect against his suicide attempt," and therefore abandons his

12   claim for failure to protect against a risk of suicide.  They further argue that "[a]t the time

13   Plaintiff attempted suicide, he was not under a '*substantial* risk of harm' from other inmates"

14   (emphasis in original). (ECF 21 at 2).  Defendant Lunes asserts in his individual reply to

15   Plaintiff's opposition that "Plaintiff's allegations amount to nothing more than a 'generalized

16   fear' that he would be attacked by the Paisas." (ECF 24 at 3).

17         Defendants cite to Plaintiff's opposition, noting that he "concedes" that "he did not have a

18   cellmate at the time he harmed himself," "that the facility was on modified program," and

19   furthermore, that Plaintiff failed to "plead that another inmate had actually threatened him." (ECF

20   21 at 3.)   On these bases, Defendants argue that Plaintiff "fails to plausibly explain how he faced

21   a risk of harm from enemy inmates, while single-celled, during a period of modified program."

22   (<u>Id.</u>)

23         Defendants conclude that the Eighth Amendment requires "more than a mere suspicion"

24   that an attack on an inmate will occur before a guard is required to act.  <u>Berg v. Kicheloe,</u> 794 F.

25   2d 457, 459 (9th Cir. 1986). (ECF 21 at 3.) They argue that Plaintiff failed to plead facts

26   demonstrating even a mere suspicion that he would be attacked, and that based "[o]n the facts

27   pled, Defendants could not infer that Plaintiff faced a serious risk of harm."  (<u>Id.</u>)

28   \\

### 3.    Plaintiff's Position

In his oppositions to Defendants' motions to dismiss (ECF 18 and 23), Plaintiff argues that "Plaintiff did not in his complaint allege that Defendant[s] failed to protect him from a Risk of Suicide," nor that Defendants were "deliberately indifferent to Plaintiff's heightened suicide risk brought on by the arrival of inmate Camba to his housing facility." (ECF 23 at 2-3.)  Plaintiff asserts that he "was not aware that he was suicidal at the time of the interview," (ECF 23 at 3.) Plaintiff, however, argues that Defendants' demand for information of illegal activity in the facility in exchange for protection; Defendant Lunes' statement: "you choose the wrong day"; the fact that Sgt. Lunes stated loudly that Plaintiff should let him know if he had any information; and the fact that Plaintiff was "never informed that an investigation was ongoing," - - combined with his safety concerns - - all contributed to his attempt to commit suicide. (ECF 18 at 3; ECG 23 at 3.) Plaintiff notes that the fact that "the group of inmates Plaintiff feared. . . .were being escorted in restraints did not provide relief that Plaintiff was not in danger," because Plaintiff knew after talking with Defendants that he was not going to be protected. (ECF 18 at 3; ECG 23 at 3.)

Plaintiff contests Defendants' argument that his fears were speculative. (ECF 18 at 3-4; ECf 23 at 3-4.)  Plaintiff notes that he did allege in his Complaint and in his reports to Defendants that he had been a victim of gang violence in the past when he was "jumped" by inmate Camba's brother in order to disassociate from the Compton Varrio Segundo gang. (ECF 18 at 2; ECF 23 at 3.)  Plaintiff also asserts that he clearly explained that Camba's presence in the facility posed a threat to him because prison gang politics and rules prohibit "dropouts" or "betrayers," and with Camba's presence, the Paisas - - the prison gang Plaintiff now belonged to - - would learn of his previous associations and "drop-out" status, and would take action to get him out of the facility. (ECF 18 at 4; ECF 23 at 4.) As an example to what kind of danger he was in, Plaintiff notes that at one point he had been notified by the Paisas that "if a person came in his cell claiming to be Paisa, but had gang tattoos, to let Paisas know  . . .[because] that mean[t] the person was no good and [would] be taken out from the . . . institution, by getting stabbed, assaulted, etc." (ECF 23 at 4.)  Plaintiff notes "that a remedy for unsafe conditions need not await a tragic event." Helling v. McKinney, 509 U.S. 25 (1993). (ECF 23 at 3.) Plaintiff also notes that the mere fact that he had

1  disassociated from a prior gang, and had been "jumped out (assaulted)" by Camba's brother

2  "meant war [had been] declared" and he should not have had to wait for an attack. (Id at 4).

3  Plaintiff concludes that these facts are sufficient to state his claim. (ECF 18 at 4; ECF 23 at 5.)

4  **V.**  **DISCUSSION**

5  **A.**  **Plaintiff's Suicide Attempt Was a Proximate Result of Defendants' Eight**

6  **Amendment Violations**

7  The Court disagrees with Defendants that Plaintiff's Complaint should be dismissed

8  because he attempted suicide from fear of an attack rather than waiting for the attack to take

9  place.

10  No case holds that officers can be deliberately indifferent to safety so long as the harm is

11  from a fear of attack, rather than the attack itself.  Instead, "the harm . . . actually suffered need

12  not have been the most likely result among [the] range of outcomes." Lemire, 726 F.3d at 1076.

13  The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates 'a species of tort

14  liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to

15  them 306 by the Constitution." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305-06,

16  (1986) (internal quotations and citations omitted).   Thus, when a plaintiff seeks damages under

17  section 1983 for violations of his constitutional rights, as here, "the level of damages is ordinarily

18  determined according to principles derived from the common law of torts." Id.  Plaintiff must

19  therefore demonstrate that Defendants' "conduct was the actionable cause of the claimed injury

20  and establish both causation-in-fact and proximate causation." Harper v. City of Los Angeles, 533

21  F.3d 1010, 1026 (9th Cir. 2008)

22  Plaintiff pleads sufficient facts to satisfy this requirement.  Plaintiff pleads sufficient facts

23  to show that Defendants' failure to take reasonable steps to protect him from attack from other

24  inmates was a proximate cause of his suicide attempt.  Plaintiff alleges that when he was unable

25  to furnish requested information to Defendants, they told him they could not help him, and made

26  no effort to assure him that they would nonetheless investigate his concerns.  In fact, his concerns

27  were made worse when Defendant Lunes, who allegedly had previously told Plaintiff that he had

28  "choosed [*sic*] the wrong day," came up to Plaintiff's cell and stated loudly, so that other

1    prisoners could hear, that Plaintiff should contact him should he change his mind about giving

2    information.  Plaintiff also pleads that he attempted suicide because of Defendant's deliberate

3    indifference, including the fact that Plaintiff believed he would be attacked without protection

4    from the prison and because Defendants were exacerbating the risk by their actions.  A suicide

5    attempt once a prisoner's request for protection has been denied is a foreseeable harm under the

6    circumstances.

7        Defendants cite <u>Buren v. Waddle,</u> No. 1:14-CV-01984-MJS, 2014 WL 733750 (E.D. Cal.

8    Dec. 23, 2014), for the proposition that they would not be liable for Plaintiff's suicide attempt

9    because it was not "obvious and substantial . . . ." <u>Id.</u> at *6.  It is worth noting that the

10   unpublished district court case is not precedential.  Nonetheless, <u>Buren</u> concerned whether

11   Plaintiff had sufficiently alleged a substantial risk of harm, in that case suicide, and turned on the

12   specific facts alleged relating to the chance of suicide.  That case did not address the question of

13   whether Defendants can be liable for a suicide attempt that stems from a failure to protect against

14   an imminent attack.

15        Therefore, taking Plaintiff's allegations as true, it is reasonable to find that Plaintiff

16   attempted suicide because he was not being protected from a feared attack, and Defendants were

17   making the risk worse by their actions.  Attempted suicide is reasonably within the "range of

18   serious harms" that could result from learning that prison officials who are in charge of one's

19   safety have refused protection, and instead used a prisoner's fear as a means of extortion.   Given

20   these facts, a jury could conclude that Plaintiff's suicide attempt was factually and proximately

21   caused by Defendants' response to his request for protection. <u>Lemire</u>, 726 F.3d at 1068, 1076;

22   <u>Harper</u>, 533 F.3d at 1026.

23      **B.**      <u>**Plaintiff Pleads Sufficient Facts to Prove That Defendants Were Aware of a**</u>

24              <u>**Substantial Risk of Attack**</u>

25        The Court also recommends denying Defendants' motions to dismiss to the extent they

26   claim that Plaintiff's fear of attack as conveyed to Defendants was too speculative.

27        Under the Eighth Amendment, Defendants had a duty to take reasonable steps to protect

28   Plaintiff from attacks from other inmates. <u>Farmer,</u> 511 U.S. at 832-33.  The mere fact that

11

1   Plaintiff did not actually suffer harm at the hands of other inmates does not preclude his claim.

2   "[A] prisoner need not wait until he is actually assaulted before obtaining relief." Helling, 509

3   U.S. at 34 (citing Ramos v. Lamm, 639 F.2d 559, 572 (10th Cir. 1980).)

4         Here, Plaintiff has alleged sufficient facts that establish a credible threat of attack that was

5   not merely speculative.  Plaintiff alleges that he had previously been assaulted by Camba's

6   brother when he disassociated himself from the Compton Varrio Segundo gang; that in joining

7   the Paisas in prison Plaintiff had violated prison gang rules that prohibit "betrayers" or "drop

8   outs" in General Population; and that there was a substantial risk of harm arising from Camba's

9   presence in the facility because he would be assaulted or killed pursuant to gang rules once it was

10  discovered that he was a "betrayer"/ "drop out."  Plaintiff alleges that he is particularly vulnerable

11  to attack because he is in a wheelchair.  Plaintiff also alleges that he believed the threat was so

12  credible that he attempted suicide.

13        Additionally, Defendants acted consistent with believing that Plaintiff faced a real and

14  credible threat.  After all, Plaintiff alleges that Defendants attempted to extort information from

15  Plaintiff in exchange for protection.  If Defendants had not - - at the very least- - "drawn the

16  inference that a substantial risk of serious harm exist[ed]," they would not have conditioned

17  Plaintiff's protection on his willingness to cooperate. Farmer, 511 U.S. at 837.

18        In his reply brief, Defendant Lunes compares Plaintiff's claims to those in Ahdom v. Cate,

19  2013 U.S. Dist. LEXIS 124239 (E.D. Cal. Aug. 28, 2013), in which the Court there held that the

20  plaintiff's fears of a future attack by inmates were speculative.  As noted, that case is not

21  precedential.  Nonetheless, Ahdom addresses issues not present in Plaintiff's claim.  In Ahdom,

22  the plaintiff complained that as a result of the prisons' overall failure to enforce its" 'zero

23  tolerance' policy of gang activity," he had "been the victim of assault, extortion, and

24  intimidation," and that the prison's continued failure to enforce the policy "present[ed] a real

25  likelihood that Plaintiff [would] again become the victim of assault." Ahdom, at *4.  Plaintiff here

26  makes no such generalized claim.  Instead, Plaintiff specifies that his risk of serious harm and

27  fears of attack arose when inmate Camba arrived to the facility.  His fears were based on the very

28  real possibility that the Paisas would learn from Camba that Plaintiff had disassociated from

another gang.  His was not a "generalized fear" that he might be harmed simply because gang members were *present* in the facility.  See, Porter v. Cash, No. CV 11-10308-DMG (AGR), 2012 U.S. Dist. LEXIS 153126, at *15 (C.D. Cal. Sep. 20, 2012); Ahdom, at *6.  His was a specific fear arising from the presence of a specific gang member.

Regardless, whether Plaintiff's fear was speculative is a highly factual question that should not be resolved on a motion to dismiss.  Lemire, 726 F. 3d at 1078.  Therefore, taken in the light most favorable to Plaintiff, as the Court must, Plaintiff has stated a claim.  Scheuer, 416 U.S. at 236.

## VI.   CONCLUSIONS AND RECOMMENDATIONS

With respect to Defendants' Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court recommends finding that Plaintiff states cognizable claims under the Eighth Amendment for failure to protect, against Defendants Cruz, Shaw, and Lunes.  Plaintiff has alleged facts that would establish that Plaintiff's suicide attempt was a proximate result of Defendants' failure to protect and that the threat of attack was not merely speculative.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant C/O Cruz' and C/O Shaw's Rule 12(b)(6) motion to dismiss, filed July 8, 2015, be denied in its entirety; and

2.    Defendant Sgt. Lunes' Rule 12(b)(6) motion to dismiss, filed July 30, 2015, be denied in its entirety.

These Findings and Recommendations will be submitted to the United State District Court judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.

///

///

///

1    The parties are advised that failure to file objections within the specified time may result

2  in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F. 3d 834, 839 (9th Cir. 2014)

3  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5

6  IT IS SO ORDERED.

7

8        Dated:   **January 27, 2016**          /s/ Erica P. Grosjean

                                          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28