UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE PULIDO,<br><br>            Plaintiff,<br><br>   vs.<br><br>M. LUNES, et al.,<br><br>            Defendants. | 1:14-cv-01174-DAD-EPG (PC)<br><br>ORDER REQUIRING PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO THE "OFFICIAL INFORMATION PRIVILEGE" WITH REDACTIONS |

     Plaintiff Jose Pulido ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed on July 28, 2014 pursuant to 42 U.S.C. § 1983. Plaintiff alleges a violation of his Eighth Amendment rights based upon defendants' failure to protect him while in the custody of the California Department of Corrections and Rehabilitation in Corcoran, California.

     Pursuant to the Court's order requiring initial disclosures (Doc. 41), Defendants Cruz and Shaw provided a privilege log indicating they were withholding certain documents pursuant to the Official Information Privilege. During a telephonic discovery conference, as clarified in a subsequent order, the Court ordered Defendants Cruz and Shaw to submit for *in camera* review certain documents that were withheld from their initial disclosures and to submit briefing explaining their position. (Doc. 64). Defendants Cruz and Shaw timely submitted such documents for *in camera* review along with a brief in support of their purported privilege. Defendants submitted one set of documents without redactions and another set with limited proposed redactions of confidential personal information.

     The Court has reviewed the documents and orders certain disclosures.

## I. LEGAL STANDARDS

In <u>Kerr v. United States Dist. Ct. for the N. Dist. of Cal.</u>, 511 F.2d 192 (9th Cir. 1975), <u>aff'd</u> 426 U.S. 394 (1976), the 9th Circuit examined the government's claim of the official information privilege as a basis to withhold documents sought under the Freedom of Information Act. In doing so, it explained that the "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure . . . ." <u>Kerr v. U.S. Dist. Court for Northern Dist. of California</u>, 511 F.2d 192, 198 (9th Cir. 1975) <u>aff'd</u> 426 U.S. 394 (1976) (internal citations and quotations omitted).

The 9th Circuit has since followed <u>Kerr</u> in requiring a balancing of interests and *in camera* review in ruling on the government's claim of the official information privilege. <u>See, e.g.</u>, <u>Seminara v. City of Long Beach,</u> 68 F.3d 481 (9th Cir. 1995) (affirming Magistrate Judge order compelling disclosure and stating "Federal common law recognizes a qualified privilege for official information. *Kerr v. United States Dist. Ct. for N.D. Cal.,* 511 F.2d 192, 198 (9th Cir.1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119 (1976). In determining whether information sought is privileged, we must employ a balancing test, weighing the potential benefits of disclosure against the potential disadvantages"); <u>Breed v. U.S. Dist. Court for Northern Dist. of California</u> 542 F.2d 1114, 1116 (9th Cir. 1976) ("Also, as required by Kerr, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'"). Furthremore, in <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033-34 (9th Cir. 1990), the 9th Circuit explained "[g]overnment personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." <u>Sanchez v. City of Santa Ana</u> (9th Cir. 1990) 936 F.2d 1027, 1033-34, as amended on denial of reh'g (Feb. 27, 1991), as amended on denial of reh'g (May 24, 1991) (internal citations and quotations omitted).

\\\

\\\

**II.      Application of Law to Documents Being Withheld**

Defendants Cruz and Shaw have withheld reports, memoranda, and other documents related to a personnel investigation associated with the underlying event in this case. Specifically, the withheld documents include a settlement report, a decision approving a stipulation for settlement, a stipulation and release, a notice of certain personnel action, and a thorough investigation report. These documents generally concern a gathering of facts from documents and interviews related to the underlying event, and the conclusion and underlying action taken by the Office of Internal Affairs as a result of that conclusion. Notably, the underlying interviews, memoranda, and documents cited in the reports have not been included.[1]

Defendants' Brief relies on the Declaration of J. Barba in Support of Defendant Cruz's and Shaw's Privilege Log in Support of Initial Disclosures. (Doc. 56, at 18-20). That Declaration provides the following security concerns associated with the documents:

> These documents contain personal information belonging to CDCR staff members, including their full names, dates of birth, home addresses, disciplinary history, employment history, among other information.
>
> As mentioned above (*see* ¶ 16), the Information Practices Act of 1977, prohibits public agencies from disclosing "any personal information in a manner that would link the information disclosed to the individual to whom it pertains." Cal. Civ. Code § 1798.24. Also as mentioned above, disclosing correctional staff members' personal information to inmates puts them, their families, and their property in danger, interferes with their authority, reduces their morale, and hampers CDCR's ability to recruit and retain personnel. (*See* ¶¶ 17-18.)
>
> This document also contains confidential information relating to inmate enemy concerns. Inmates in CDCR prisons are routinely subject to intense pressure from other inmates, including prison gang members, to disclose private information they may learn about other inmates, particularly enemy information. Inmates who obtain confidential information are at risk from other inmates who may use force to obtain it, endangering the safety and security of CDCR institutions, its inmates, and its staff.

---

[1] To the extent the interviews, memoranda, and other supporting documents are within the possession, custody and control of defendants, they must be produced to plaintiff or provided to the Court, as ordered below.

3

This document also contains confidential statements made by third-party members concerning the incident that is the subject of inmate Pulido's lawsuit. Disclosing this document would invade the privacy rights of these individuals, because staff-witnesses often cooperate with investigations with the expectation that their statements will remain confidential. Staff-witnesses might not be as forthright if they knew that their words could be used against an individual officer by an inmate-plaintiff.

Moreover, information obtained during staff investigations is maintained as confidential to encourage staff-witnesses to make truthful statements, and to encourage investigating staff to accurately report their findings. Disclosing this type of information would hinder CDCR's ability to conduct accurate and reliable  investigations, which could jeopardize the safety and security of the prisons under its management.

Disclosure of such information would also educate inmates on the methods by which staff are evaluated. Armed with this information, inmates could falsely accuse staff members or otherwise manipulate the investigation process, thereby hampering future investigations.

Furthermore, inmates in California correctional facilities are routinely subject to intense pressure from other inmates, including gang members, to disclose private information they may learn about others, including CDCR staff. Inmates who obtain confidential information are at risk from other inmates who may use force to obtain it, endangering the security of the correctional facilities and the safety of other inmates and staff. CDCR employees are routinely subject to false accusations of misconduct, and information allowing for more highly detailed accusations is in high demand.

Additionally, documents relating to an Internal Affairs investigation are considered part of an officer's personnel file. Documents in an officer's personnel file are confidential under title 15, section 3321(a)(1) and (2) of the California Code of Regulations. Personnel files are further protected by the California Public Safety Officers Bill of Rights. *See* Cal. Gov't Code, §§ 3300-3313.

As an initial matter, the Court will allow Defendants to withhold personal information, as reflected in the redactions proposed by Defendants.  The Court is sensitive to concerns about privacy and security of correctional officers and believes that the proposed redactions of such information is appropriate.  This decision is without prejudice to a later request by Plaintiff for sufficient information about the witnesses to compel their attendance at deposition or trial, if necessary.

The Court will also allow Defendants to withhold Privilege Log Item No. 3 in its entirety. Those documents concern a settlement report and related documents. They do not contain any unique factual information. Rather, they concern administrative actions taken as a result of the investigation. Such internal CDCR proceedings are not relevant to the factual questions before this Court and ultimately before the fact finders in this case, and any relevant information is outweighed by concerns regarding revealing internal CDCR procedures.

Privilege Log Item No. 4 is a notice of adverse action. The Court considered this document carefully because it contains both opinions, which are not especially relevant and arguably inadmissible to the ultimate fact-finder, as well as facts and other relevant compiled information. The Court did not see any specific security issues, besides the general concern with disclosing information given by other witnesses, discussed further below. Ultimately, the Court orders production of the redacted version of the document with the following additional redactions: Section I, Section II, and Section V. Those sections do not include underlying factual information and do include sensitive CDCR procedures. Applying the required balancing test, the Court finds that the probative value of the remainder of the document outweighs the disadvantages to disclosure.

Privilege Log No. 5 is the Office of Internal Affairs, Investigation Report. It primarily contains summaries of interviews resulting from the investigation. The redacted version excludes personal information beyond the first initial and last names of the correctional officers. The information contained in the interviews is highly relevant and probative, and includes each percipient witness's specific account of the events at issue in this case, including statements by each of the defendants. It also reviews all documentary evidence (while not attaching any such documents). It does not appear to reveal any CDCR security or safety issues. Moreover, to the extent it discusses enemy combatants, that information is already disclosed in Plaintiff's complaint and related documents.

Indeed the only disadvantage to disclosure appears to be the potential that disclosure would make witnesses less likely to reveal truthful information in the future. On this issue, this Court agrees with the considered statements of the Court in <u>Kelly v. City of San Jose</u>, 114

F.R.D. 653 (N.D. Cal. 1987) from the Northern District of California, a case which is widely cited by courts throughout this circuit in evaluating the official information privilege:

> [Some] courts seem to assume that there is a greater risk that officers doing this work would not express their views honestly if they knew their words might be used against individual officers or the police department by a civil rights plaintiff. . . . There are at least two problems with the reasoning that supports this view. One is that the premise that supports it (that investigating officers will be less forthright in expressing their opinions if there is a risk of disclosure) is empirically unsupported and very debatable. The other problem with this line of reasoning is that after it acknowledges the great importance of enforcing federal civil rights policies it *fails to articulate a reason* for deciding to ascribe less weight to that enforcement effort than to the unmeasured harm to government interests that might follow from disclosure of evaluative material in internal affairs files. . . .
>
> Since no empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in internal affairs investigations less honest it is doubly important to examine the assumptions that underlie that contention. If we posit two alternatives, one in which there is no possibility of disclosure and one in which there is some possibility of disclosure to litigants (protective orders can be used to prevent disclosure to the public generally), and ask which is most conducive to candor, strong arguments can be advanced that it is the alternative in which there is some possibility of disclosure. A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible. An officer might expect that someone within his organization would be less exacting in reviewing his statements or reports than someone from the outside, especially if the person from the outside already has substantial information about the incident under investigation and has a strong motive to challenge the accuracy of the officer's memory or the reliability of his conclusions. We rely in our adversary system of justice on the fear of being challenged and exposed by an opponent to keep litigants and lawyers honest. . . .
>
> Fear of scrutiny by knowledgeable people motivated to be aggressive is likely to inspire police officers to conduct investigations and write reports that are less vulnerable to criticism, and the way to make them less vulnerable is to make them more thorough, more accurate and better reasoned. In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and her lawyer). Thus

> there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report. . . .

Id. at 664-66.  In the end, the possibility that disclosure could discourage witnesses from speaking truthfully in future investigations does not outweigh the advantage of disclosure.  The underlying assumption is questionable, as the Kerr court describes.  Indeed, a witness who decided to speak out against a fellow correctional officer may very well be dismayed to learn that the correctional officer evaded liability because such a statement was withheld.

Accordingly, Defendants are required to produce Privilege Log No. 5 with the submitted redactions.

### III.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Within 14 days from this order, Defendants shall provide Plaintiff with documents withheld under the official information privilege and provided *in camera* to the Court as described in this order.

2. Within 30 days from this order, Defendants shall either provide Plaintiff with all additional documents and materials regarding the Investigation by the Office of Internal Affairs of this incident, provide them to the Court for further *in camera* review, or notify Plaintiff and the Court that they are not in Defendants' possession custody and control.  This includes all written or recorded interviews associated with the investigation, as well as underlying documents referred to in the investigation report.

IT IS SO ORDERED.

Dated:   **August 24, 2016**             /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE